IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Civil No. 3:20-CR-0002-X |
| MARK DAVID SCHNEIDER | |

## FACTUAL RESUME

In support of Mark David Schneider's plea of guilty to the offense in Count One of the Indictment, Schneider (the defendant), Jeffrey Ansley, Katherine Devlin (the defendant's attorneys), and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the Indictment, charging a violation of 18 U.S.C. § 371 (42 U.S.C. § 1320a-7b(b)(1)), that is, Conspiracy to Solicit and Receive Kickbacks, the government must prove each of the following elements beyond a reasonable doubt[1]:

*First.*   That the defendant and at least one other person made an agreement to commit the crime charged in the indictment;

*Second.*   That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

*Third.*   That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the information, in order to accomplish some object or purpose of the conspiracy.

---

[1] Fifth Circuit Pattern Jury Instructions 2.15A (5th Cir. 2019).

**Factual Resume—Page 1**

The elements of the Soliciting and Receiving Illegal Kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1), are as follows[2]:

*First.* That the defendant, or a person that the defendant was aiding or abetting, solicited and received any remuneration, including any kickback, bribe, or rebate, as described in the indictment;

*Second.* That the remuneration was solicited and received in return for referring an individual to Total RX for the furnishing of an item;

*Third.* That the item was one for which payment was or might be made, in whole or in part, under a Federal health care program; and

*Fourth.* That the defendant acted knowingly and willfully when soliciting and receiving the remuneration.

## STIPULATED FACTS

1. Defendant **Mark David Schneider (Schneider)** admits and agrees that from in or about March 2015 through in or about October 2015, in the Northern District of Texas and elsewhere, he, along with Kevin Douglas Kuykendall, Sabrina Burmester Kuykendall, Moky Cheung, Michael Ray Schneider, and Trenton Lynn Moody, and others known to the Grand Jury knowingly and willfully conspired, confederated, and agreed with each other, and with others known and unknown to the Grand Jury, to commit offenses against the United States, that is, violations of Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, including kickbacks, directly and indirectly, overtly and covertly, in cash and in kind, for the furnishing of items and services for which payment may be made in whole or in part under a Federal health care program.

2. **Schneider** further admits that it was a purpose and object of the conspiracy for **Schneider** and other co-conspirators to unlawfully enrich themselves through the payment,

---

[2] Fifth Circuit Pattern Jury Instruction 2.109A (5th Cir. 2019).

Factual Resume—Page 2

solicitation and receipt of bribes and kickbacks from Total RX pharmacy in exchange for referring items and services, namely prescriptions, for which payment was made in whole or in part under a Federal health care program, as defined by 42 U.S.C. § 1320a-7b(f), including Medicare, TRICARE and the Department of Labor-Office of Workers' Compensation Programs ("DOL-OWCP").

3.  **Schneider** agrees that Medicare, TRICARE and DOL-OWCP were all "federal health care programs" as defined by 42 U.S.C. § 1320a-7b(f).

4.  Starting in or about January 1, 2015, **Schneider**, along with Kevin Douglas Kuykendall, founded Medoc Health Services, Inc. Generally, Medoc entered into relationships with doctors who supplied prescriptions for various medications, often compound pain creams, that, at Medoc's direction, were sent by the doctors to Total RX for fulfillment.

5.  **Schneider** agrees and admits that he came to be aware of the Anti- Kickback Statute, 42 U.S.C. § 1320a-7b, and that it was illegal to receive remuneration for the referral of prescriptions funded by government insurance programs.

6.  **Schneider** agrees and admits, as an overt act in furtherance of the conspiracy, in early 2015, Medoc entered into an agreement with Total RX, a pharmacy based in Rowlett, Texas, in which Medoc sent Total RX prescriptions for compound pain creams (among other things) that were covered by private insurance programs, such as Aetna and Blue Cross, and Total RX would fill the prescriptions and send 50% of the net adjudications (i.e., the revenue collected minus the costs of goods sold) back to Medoc.

7.  **Schneider** admits, as an overt act in furtherance of the conspiracy, that in or about March 2015, Michael Nguyen at Total RX entered into an employment agreement with Michael Ray Schneider, one of the Medoc partners, in which Michael Ray Schneider would receive a

salary and commission on all prescriptions sent by Medoc to Total RX that were covered by Federal health care programs, such as Medicare and TRICARE.

8. **Schneider** admits, as an overt act in furtherance of the conspiracy, on or about March 31, 2015, Michael Ray Schneider sent Cheung, Kevin Douglas Kuykendall, and Nguyen a copy of the employment agreement that was executed by Michael Ray Schneider. The employee agreement required Total RX to pay Michael Ray Schneider a salary and commissions equal to 45% of the "Net Adjudications (Gross Adjudication less Cost of Goods) per month from all Medicare, Medicaid, and Tricare."

9. **Schneider** admits, as an overt act in furtherance of the conspiracy, on or about April 25, 2015, **Schneider,** along with co-conspirators Kevin Douglas Kuykendall, Moky Cheung, and Trenton Lynn Moody, entered into an Operating Agreement for Barolo Partners, LLC, which was used to receive a portion of the purported salary paid to Michael Ray Schneider and later disbursed to **Schneider** and other co-conspirators. Barolo Partners, LLC was created primarily for receiving and distributing the purported salary of Michael Ray Schneider. **Schneider** was the Manager of Barolo Partners, LLC.

10. **Schneider** admits that, as an overt act in furtherance of the conspiracy, after the formation of Barolo Partners, LLC, an "Independent Contractor Services Agreement" ("Contractor Agreement") was executed between Michael Schneider and Barolo Partners, LLC. The Contractor Agreement was an attempt to provide a "cover" for the money derived from illegal kickbacks that Michael Schneider was sharing with the members of Barolo Partners, LLC. The Contractor Agreement corroborates that the Employment Agreement was a sham, and that Total RX never exercised any control over Michael Schneider.

11.     **Schneider** admits, as an overt act in furtherance of the conspiracy, that on or about April 29, 2015, he opened Account No. x6927 at J.P. Morgan Chase in the name of Barolo Partners, LLC.

12.     **Schneider** admits, as an overt act in furtherance of the conspiracy, that on or about May 15, 2015, he registered an entity called MCS Interests Management, LLC with the Texas Secretary of State.

13.     Between on or about April 29, 2015, and September 1, 2015, **Schneider** admits, as overt acts in furtherance of the conspiracy, he received distributions of his portion of the illegal kickbacks paid to Michael Ray Schneider and funneled through the Barolo Partners' Account No. x6927 at J.P. Morgan Chase.

14.     **Schneider** admits, as an overt act in furtherance of the conspiracy, that MCS Interests Management, LLC was used for the purpose of receiving a portion of Michael Ray Schneider's "salary" that had been deposited into the Barolo Partners' Account.

15.     **Schneider** admits and agrees, as an overt act in furtherance of the conspiracy, that the employment agreement between Michael Ray Schneider and Total RX was a way to "paper up" the payment of illegal kickbacks to the Medoc partners for the furnishing of prescriptions that were, or could be, paid in whole or in part by a Federal health care program. **Schneider** further admits that he knew that the employment relationship between Total RX and Michael Ray Schneider was not a normal employer- employee relationship.

16.     **Schneider** admits that even though Kevin Douglas Kuykendall told **Schneider** that Attorney A, an attorney known to the U.S. Attorney's Office, had approved the payments to Michael Ray Schneider under the employment agreement, **Schneider** came to understand that the payments were improper because Michael Ray Schneider was not a bona-fide employee of

Factual Resume—Page 5

Total RX. **Schneider** continued to engage in the conspiracy after knowing the illegality of the payments and did not ask his co-conspirators to stop engaging in the conspiracy either. **Schneider** did not return, nor made any attempts to return, any portion of funds he received from the conspiracy.

17. **Schneider** further admits that during the time period of the conspiracy, he never had a discussion with Attorney A in any form concerning the legality of the arrangement between himself, the other co-conspirators, Medoc, and Total RX.

18. **Schneider** admits that in or about August 2015, **Schneider**, Kevin Kuykendall, Sabrina Kuykendall, Michael Schneider, and others created Vintage Grow Investment Partners I, L.L.C. ("Vintage") and that subsequently, Vintage entered into an agreement with Doctors Specialty Pharmacy ("DSP") where DSP would pay Vintage a large percentage of DSP's gross operating income in return for "marketing services." Trenton Moody and Moky Cheung were Vintage Partners. **Schneider** admits that the "marketing services" were nonexistent and that DSP was paying Vintage for federal prescriptions that were directed to DSP from Medoc. **Schneider** admits that DSP received approximately $600,000 in payment from federal claims between August 2015 and October 2015 and a large percentage of those funds were paid to Vintage. Those funds were divided among the Vintage partners including **Schneider**, Kevin Kuykendall, Sabrina Kuykendall, Michael Schneider and others.

19. The defendant agrees that the defendant committed all the essential elements of the offense(s). This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the Indictment.

AGREED TO AND STIPULATED on this 26 day of December, 2023.

|  |  |
|---|---|
|  | LEIGHA SIMONTON<br>UNITED STATES ATTORNEY |
| *(signature)*<br>_____<br>MARK DAVID SCHNEIDER<br>Defendant | *(signature)*<br>_____<br>DONNA STRITTMATTER MAX<br>Assistant United States Attorney<br>Texas Bar No. 24041984<br>DOUGLAS BRASHER<br>Assistant United States Attorney<br>Texas Bar No. 24077601<br>1100 Commerce Street, Third Floor<br>Dallas, Texas 75242<br>Telephone: 214.659.8600<br>Facsimile: 214.659.8800<br>Email: donna.max@usdoj.gov<br>Email: douglas.brasher@usdoj.gov |
| *(signature)*<br>_____<br>Jeffrey Ansley<br>Attorney for Defendant |  |
| *(signature)*<br>_____<br>Katherine M. Devlin<br>Attorney for Defendant |  |

Factual Resume—Page 7